Andrew Shamis
Arizona Bar No. 037343
*ashamis@shamisgentile.com*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

[Additional Counsel in Signature Block]

*Attorney for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| JAMIE SHIELDS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAMAN BEAUTY, LLC,<br><br>Defendant. | Case:<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jamie Shields ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Daman Beauty, LLC ("Defendant") and alleges, based upon personal knowledge as to Plaintiff and Plaintiff's acts, and on information and belief as to all other matters based upon, *inter alia*, the investigation of counsel, as follows:

### NATURE OF THE ACTION

1. This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Aphrona Moonlight Pro LED Facial Mask products that are marketed, sold, and distributed by Defendant ("Products").

2. Defendant's Products are sold on its website, aphronabeauty.com, as well as third-party retailer websites, like amazon.com and Walmart.com.

3.    As described more thoroughly below, the Products are mislabeled and misrepresented to Plaintiff and members of the proposed class, defined below.

4.    Specifically, Defendant deceives consumers into believing the Products are favored, endorsed, or approved by the United States Food & Drug Administration ("FDA") by, *inter alia*, placing the FDA name and logo on the Products' packaging.

5.     Defendant's representations about the Products are false, misleading, and reasonably likely to deceive the public.

6.    Defendant's prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harm the public and, if unstopped, could lead to substantial societal harm.

7.    Plaintiff brings this suit to halt Defendant's unlawful sales and marketing of its Products and for damages she sustained as a result of Defendant's false and misleading marketing. Declaratory and injunctive relief is of particular importance given the likely consequences of Defendant's actions.

## **PARTIES**

8.    Plaintiff is a natural person who is a resident and citizen of the state of Arizona.

9.    Defendant is a Texas limited liability corporation with its principal place of business located at 5252 Hollister Street, Suite 525, Houston, TX 77040. Defendant manufactures, markets, and sells the Products throughout Arizona and the United States. Upon information and belief, Defendant's members are not citizens of the state of Arizona.

## **JURISDICTION AND VENUE**

10.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, there are thousands of Class members, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

11.    This Court has personal jurisdiction over Defendant in this matter because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this District.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## FACTUAL ALLEGATIONS

### The Products

13.    The Products are LED face masks that purportedly use seven different colors to "transform your skin using Red, Blue, Green, Purple, Yellow, Cyan and White LED Light":



[1]

---

[1] https://www.aphronabeauty.com/products/led-facial-skin-care-mask-pro?variant=41361237213322&country=US&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&srsltid=AfmBOoqfKOkzuIW2YB-zhVTo0FkbkgW53KeOe4INYH6ReJeG78yTZBxKi3Q&gQT=2.

14.     On its website, Defendant states:

Achieve glowing skin free of blemishes and discoloration with light therapy from the Aphrona LED Mask. Penetrating deep to the cellular level to help minimize fine lines, support wrinkle reduction and acne reduction.[2]

15.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner. Defendant sells the Products in all 50 states through various distributors and retailers across the United States.

### The Federal Food, Drug and Cosmetic Act

16.     The Medical Device Amendments of 1976 to the Federal Food, Drug and Cosmetic Act ("FDCA") established three regulatory classes for medical devices. The three classes are based on the degree of control necessary to assure the various types of devices are safe and effective: Class I, Class II, and Class III.[3]

17.     Most medical devices (i.e., 43%) are considered Class II devices.[4]

18.     FDA *clearance* is required for Class II medical devices. Manufacturers must demonstrate that their device is "substantially equivalent to a legally marketed predicate device that does not require premarket approval." In other words, a similar device already exists on the market. The manufacturer uses the 510(k) process to review Class II medical devices.[5]

19.     FDA *approval*, on the other hand, is required for Class III devices[6] before they are introduced onto the market. Manufacturers are required to establish to a satisfactory and science-backed standard that there is "reasonable assurance the devices are safe and effective for their intended use."[7]

---

[2] *Id.*
[3] https://www.fda.gov/medical-devices/consumers-medical-devices/learn-if-medical-device-has-been-cleared-fda-marketing.
[4] *Id.*
[5] https://www.projectebeauty.com/blogs/news/does-fda-approval-matter-when-choosing-an-led-light-therapy-mask.
[6] Class III medical devices "include defibrillators, implantable pacemakers, cochlear implants - and importantly **not LED light therapy devices**." https://www.projectebeauty.com/blogs/news/does-fda-approval-matter-when-choosing-an-led-light-therapy-mask.
[7] *Id.*

20.    LED light therapy devices like the Products are Class II medical devices.

21.    "[A]n LED light therapy device cannot be 'FDA-approved' as it does not meet the risk category associated with [the FDA Class III medical device] requirement."[8]

22.    The FDCA prohibits the distribution of devices that are misbranded. A device is considered misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 352(a)(1).

23.    "Labeling" includes the label and any other written, printed, or graphic material that accompanies a device and any of its wrappers or containers.[9]

24.    Any device that is misbranded is illegal to sell. 21 U.S.C. § 331(a). Misbranded devices thus have no economic value and are legally worthless.

23.    Also, the FDA specifically prohibits private sector companies, like Defendant, from using the FDA's name and logo on their materials, as such use would mislead consumers into  the FDA endorses certain products.[10]

26.    The FDA's Name and Logo Policy states:

The "FDA" name, an initialism for the U.S. Food and Drug Administration, and corresponding logos are trademarks and service marks (hereinafter, "FDA Marks") specifically for the official use of the U.S. Food and Drug Administration and not for use by the private sector or on private sector materials, unless specifically authorized, in writing, by the FDA. Unauthorized use of FDA Marks on private sector materials could send a message to the public that the FDA favors or endorses a private sector organization or the organization's activities, products, services, and/or personnel (either overtly or tacitly), which the FDA does not and cannot do.

Unauthorized use of the FDA Marks may violate federal law and subject those responsible to civil and/or criminal liability.[11]

27.    Arizona law incorporates the FDCA requirements regarding medical device misbranding. *See* Ariz. Rev. Stat. § 32-1965 (prohibiting, *inter alia*, the manufacture, sale, holding or offering for sale of any device that is misbranded); Ariz. Rev. Stat. § 32-

---

[8] *Id.*
[9] https://www.fda.gov/medical-devices/regulatory-controls/general-controls-medical-devices#misbranding.
[10] *See* https://www.fda.gov/about-fda/website-policies/fda-name-and-logo-policy.
[11] *Id.*

1967(A)(1) (providing that a device is misbranded "[i]f its labeling is false or misleading in any particular.").

**Defendant is Using the FDA Logo to Mislead Consumers into Believing the Products are favored, endorsed, or approved by the FDA.**

28.     Defendant falsely represents to consumers, including Plaintiff, that the Products are favored, endorsed, or approved by the FDA.

29.     Defendant prominently displays the FDA's logo on the back of the Products' boxes:



30.     On its website, Defendant represents the Product is:

**FDA-CLEARED** and is the only Class II 510(k) *approved* LED face mask on Amazon (not only FDA registered, but FDA 510k *approved*) for acne treatment and other skin conditions, the Aphrona Light Therapy Mask is the ultimate device for photo facial skin care. It's effective on even the most sensitive skin.[12]

---

[12] https://www.aphronabeauty.com/products/led-facial-skin-care-mask-pro?variant=41361237213322&country=US&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&srsltid=AfmBOoqfKOkzuIW2YB-zhVTo0FkbkgW53KeOe4INYH6ReJeG78yTZBxKi3Q&gQT=2 (emphasis added).

31.     Defendant also advertises, both on amazon.com and walmart.com, that the Product is an "FDA & 510K *approved* medical grade device":



---

[13] *See* https://www.amazon.com/cleared-Aphrona-Facial-Treatment-Photon/dp/B07Z4HDZGW?source=ps-sl-shoppingads-lpcontext&ref_=fplfs&smid=AQ7K8NLQ75DZZ&gQT=2&th=1; https://www.walmart.com/ip/Aphrona-FDA-cleared-LED-BCA3-nbsp-Facial-Skin-Care-Mask-MOONLIGHT-PRO-7-Color-Treatment-Photon-Mask-White/16746314387?wmlspartner=wlpa&selectedSellerId=101611277&selectedOfferId=43D3FB58F3C43DCC840F569AB090DD08&conditionGroupCode=1&gQT=2 (emphasis added).

32.     Defendant's misrepresentations, including its use of the FDA logo on the Products' labeling, is false and misleading because the Products are not favored, endorsed, or approved by the FDA.

33.     Despite its knowledge that the Products were not favored, endorsed, or approved by the FDA, Defendant introduced misbranded Products into the U.S. market. The Products are thus "misbranded" under the FDCA.

**Defendant's Representations are False and Misleading to a Reasonable Consumer**

34.     Defendant's representations are false and misleading to a reasonable consumer.

35.     Reasonable consumers would expect that the Products are FDA-favored, endorsed, or approved based on Defendants' packaging and advertisements, which prominently display the FDA logo and imply the Products are FDA approved.[14]

36.     Plaintiff and Class members relied on Defendant's misrepresentations and misstatements regarding the Products. When Plaintiff and Class members purchased Defendant's Products, they did not know, and had no reason to know, that Defendant's Products were not favored, endorsed, or approved by the FDA.

37.     Plaintiff and Class members would not have purchased the Products had they known Defendant's Products were not favored, endorsed, or approved by the FDA.

38.     As a result of Defendant's deceptive marketing, Plaintiff and other consumers suffered injury in fact and lost money or property.

39.     Plaintiff and other consumers will continue to suffer injury as a result of Defendant's ongoing misrepresentations.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

40.     Plaintiff purchased the Product for her personal use on amazon.com in July 2024 for $166.99.

41.     When purchasing the Product, Plaintiff reviewed Defendant's representations about the Product, including the marketing materials and the Product packaging, and

---

[14] See https://www.fda.gov/about-fda/website-policies/fda-name-and-logo-policy.

1   understood the FDA logo placed by Defendant on the packaging and Defendant's marketing

2   materials to mean the Product was FDA favored, endorsed, or approved; not misbranded; and

3   legal to sell. Plaintiff relied on these materially misleading representations in deciding to

4   purchase the Product manufactured and sold by Defendant, and these representations were

5   part of the basis of the bargain, in that she would not have purchased the Product, or would

6   have paid substantially less for the Product, if she had known the Product was not favored,

7   endorsed, or approved by the FDA.

8       42.    By purchasing Defendant's falsely advertised and misbranded Product,

9   Plaintiff suffered injury in fact and lost money.

10      43.    Plaintiff faces an imminent threat of future harm. Plaintiff would purchase the

11  Product from Defendant again if Defendant's false and misleading statements were true.

12  Plaintiff is, however, unable to rely on Defendant's representations in deciding whether to

13  purchase Defendant's Products in the future.

14                      **CLASS ACTION ALLEGATIONS**

15      44.    Plaintiff brings this action individually and as representative of all those

16  similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-

17  defined classes (together, "Class"):

18      **National Class:** All persons in the United States who, within the applicable
        limitations period, purchased the Products (the "National Class") for personal,
19      family, or household use and not for resale.

20      **Arizona Subclass:** All persons in the state of Arizona who, within the applicable
        limitations period, purchased the Products (the "Arizona Subclass") for personal,
21      family, or household use and not for resale.

22      45.    Specifically excluded from these definitions are: (1) Defendant, any entity in

23  which Defendant has a controlling interest, and its legal representatives, officers, directors,

24  employees, assigns and successors; (2) the Judge to whom this case is assigned and any

25  member of the Judge's staff or immediate family; and (3) Class counsel. Plaintiff reserves

26  the right to amend the Class definition and Subclass definitions as necessary.

27

28

46.    Certification of Plaintiff's claims for class-wide treatment are appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

47.    **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, it likely consists of thousands of consumers. The number of Class members can be determined by sales information and other records. Moreover, joinder of all potential Class members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized retailers.

48.    **Typicality.** The claims of the representative Plaintiff are typical in that Plaintiff, like all Class members, purchased the Products that were manufactured, marketed, advertised, distributed, and sold by Defendant. Furthermore, the factual basis of Defendant's misconduct is common to all Class members because Defendant has engaged in systematic fraudulent behavior that results in the same injury to all Class members.

49.    **Commonality.** Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

   a.    Whether Defendant made false or misleading statements of fact in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

   b.    Whether Defendant knew or should have known that the representations and advertisements regarding the Products were false and misleading;

   c.    Whether Defendant has breached implied warranties in the sale and marketing of the Products;

   d.    Whether Defendant's conduct violates public policy;

e.    Whether Defendant's acts and omissions violate Arizona law;

f.    Whether Plaintiff and the Class members suffered monetary damages, and, if so, what is the measure of those damages; and

g.    Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

50.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members. She has no interests antagonistic to those of Class members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

51.    **Injunctive/Declaratory Relief:** The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class members are likely to continue being damaged by Defendant's deceptive trade practices. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

52.    **Predominance and Superiority.** Plaintiff and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in

1    that class treatment will conserve the resources of the courts and the litigants and will promote

2    consistency and efficiency of adjudication.

3        53.    Plaintiff knows of no difficulty to be encountered in the maintenance of this

4    action that would preclude its maintenance as a class action.

5        54.    Defendant has acted or refused to act on grounds generally applicable to the

6    Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

7    with respect to the Class appropriate.

8                                **CAUSES OF ACTION**

9                                      **COUNT I**

10                    **Violation of the Arizona Consumer Fraud Act**

11                          **(Ariz. Rev. Stat. § 444-1522)**

12            **(On Behalf of the National Class and Arizona Subclass)**

13        55.    Plaintiff realleges and incorporates by reference the preceding paragraphs as if

14    fully set forth herein.

15        56.    Plaintiff brings this claim individually and on behalf of the members of the

16    National Class and the Arizona Subclass against Defendant.

17        57.    At all relevant times, there was in full force and effect the Arizona Consumer

18    Fraud and Deceptive Business Practices Act ("ACFA"), Ariz. Rev. Stat. § 44-1521 *et seq.*

19        58.    The ACFA provides:

20    The act, use or employment by any person of any deception, deceptive or unfair
      act or practice, fraud, false pretense, false promise, misrepresentation, or

21    concealment, suppression or omission of any material fact with intent that others
      rely on such concealment, suppression or omission, in connection with the sale

22    or advertisement of any merchandise whether or not any person has in fact been
      misled, deceived or damaged thereby, is declared to be an unlawful practice.

23

24    Ariz. Rev. Stat. § 44-1522.

25        59.    For the reasons discussed herein, Defendant violated and continues to violate

26    the ACFA by engaging in the deceptive or unfair acts or practices prohibited by Ariz. Rev.

27    Stat. § 44-1522. Defendant's acts and practices, including its misrepresentation regarding the

28    FDA's favor, endorsement, or approval of the Products described herein, were intended to,

1   likely to, and did in fact, deceive and mislead members of the public, including consumers

2   acting and relying reasonably under the circumstances, to their detriment.

3       60.    Defendant represented on its label and in its marketing materials that the

4   Products were favored, endorsed, or approved by the FDA by placing the FDA logo on the

5   back of the Products' packaging and stating the Products are "FDA 510K approved" and

6   "FDA & 510K approved" in its online marketing materials.

7       61.    Plaintiff and Arizona Subclass members would not have purchased the

8   Products had they known Defendant's Products were not favored, endorsed, or approved by

9   the FDA.

10      62.    Defendant's representations were material because they were likely to deceive

11  reasonable consumers to induce them to purchase the Products without being aware that the

12  Products were not favored, endorsed, or approved by the FDA.

13      63.    As a direct and proximate result of Defendant's unfair and deceptive acts or

14  practices, Plaintiff and the Arizona Subclass members suffered damages by purchasing the

15  Products in reliance on Defendant's statements because they would not have purchased the

16  Products had they known Defendant's Products were not favored, endorsed, or approved by

17  the FDA.

18      64.    Defendant's unlawful conduct is continuing, with no indication of Defendant's

19  intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff,

20  the Arizona Subclass, and the general public. Thus, Defendant's unlawful acts and practices

21  complained of herein affect the public interest.

22      65.    Plaintiff and the Arizona Subclass seek an order enjoining Defendant's unfair

23  and/or deceptive acts or practices, and awarding damages, punitive damages, and any other

24  just and proper relief available under the ACFA.

**COUNT II**

**Breach of Implied Warranty of Merchantability**

(On Behalf of the National Class and, Alternatively, the Arizona Subclass)

66.    Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

67.    Plaintiff brings this claim individually and on behalf of the members of National Class and, alternatively, the Arizona Subclass, against Defendant.

68.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class members regarding the FDA's favor, endorsement, or approval of the Products.

69.    Plaintiff and the Class members bought the Products manufactured, advertised, and sold by Defendant, as described herein.

70.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class members, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

71.    Plaintiff and the Class members purchased the Products manufactured and marketed by Defendant by and through Defendant and Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendant knew or had reason to know of the specific use for which the Products were purchased.

72.    However, Defendant breached the implied warranty of merchantability in that the Products are misbranded under 21 U.S.C. § 352(a)(1).

73.    Plaintiff provided Defendant with notice of the alleged breach within a reasonable time after she discovered the breach or should have discovered it.

74.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class members did not receive goods as impliedly warranted by Defendant to be

merchantable in that they did not conform to promises and affirmations made on the container or label of the Products, nor are they fit for their ordinary purpose of providing the benefits as promised.

75.    Defendant entered into contracts with the authorized retailers from whom Plaintiff and the Class members purchased the Product, and Plaintiff and the Class members were the intended third-party beneficiaries of those contracts.

76.    Plaintiff and the Class members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase prices.

**COUNT III**

**Unjust Enrichment**

(On Behalf of the National Class and, Alternatively, the Arizona Subclass)

77.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.    Plaintiff brings this claim on behalf of herself and the Class against Defendant.

79.    Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's Products.

80.    Plaintiff purchased the Product believing it was favored, endorsed, or approved by the FDA based on Defendant's misrepresentations, including its unauthorized use of the FDA's name and logo.

81.    Defendant voluntarily accepted and retained the benefit conferred upon it by Plaintiff and Class members.

82.    Defendant's retention of the benefit is unjust and inequitable because the Product was not actually favored, endorsed, or approved by the FDA, and Plaintiff and Class members would not have purchased the Product, or would have paid less, but for Defendant's misrepresentations.

83.    Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff and the other members of the Class, because Plaintiff,

and members of the Class, purchased Products that were not what they bargained for and were not favored, endorsed, or approved by the FDA, as claimed.

84.    Defendant was unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Class, because they would have not purchased the Products had they known the true facts.

85.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

86.    Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.    Enter an order certifying the proposed Class (and Subclass, if applicable), designating Plaintiff as the class representative, and designating the undersigned as Class counsel;

B.    Enter an order awarding Plaintiff and the Class members their actual damages and/or any other form of monetary relief provided by law;

C.    Declare that Defendant is financially responsible for notifying all Class members of the mislabeling and misbranding of the Product;

D.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Product, or order Defendant to make full restitution to Plaintiff and the members of the Class;

E.     An order awarding Plaintiff and the Class pre-judgment and post-judgment interest as allowed under the law;

F.     Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

G.     Grant such other and further relief as this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff and the putative Class members hereby demand a trial by jury on all issues so triable.

Dated: June 13, 2025                    Respectfully Submitted,


By: */s/Andrew Shamis*

Andrew Shamis
Arizona Bar No. 037343
*ashamis@shamisgentile.com*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

Kristen Lake Cardoso*
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* application forthcoming